IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TRACY LYNN TILLMAN,

      Plaintiff,

v.                                          CASE NO. 1:21-cv-79-AW-GRJ

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Tracy Lynn Tillman ("Tillman") appeals from the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and for Supplemental Social Security Income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act (the "Act").  In her appeal, Tillman raises two issues.  First, she argues that the Administrative Law Judge ("ALJ") erred by failing to evaluate her fibromyalgia under Social Security Rule ("SSR") 12-2p.  Second, Tillman contends that the ALJ erred by failing to give controlling weight to her treating rheumatologist's medical findings and opinions.  The Commissioner counters that the ALJ properly evaluated Tillman's

fibromyalgia, finding it was a severe impairment but that Tillman's complaints about the intensity and persistence of her pain were not substantiated by the objective medical evidence in the record. Further, the Commissioner argues that Tillman's reliance on the "treating physician" rule is misplaced because the rule was superseded by the agency's new regulations effective March 27, 2017.

Upon a thorough review of the record and the parties' submissions, the Court concludes that the ALJ erred by failing to evaluate properly Tillman's fibromyalgia under SSR 12-2p. Plaintiff's reliance on the treating physician rule, however, is misguided, as that rule has been superseded by the agency's new regulations.

Accordingly, the Commissioner's final decision is due to be reversed and remanded.

## I. PROCEDURAL HISTORY

Tillman protectively filed her applications for DBI and SSI on February 25, 2019. R. 242-42, 249-54. In the applications, Tillman alleged a disability onset date of November 16, 2018, when she was fifty-three (53) years old, due to a host of conditions, one of which was fibromyalgia.[1] R.

---

[1] Tillman also alleged arthritis, degenerative disc disease in her cervical and lumbar spine, bursitis, tendinitis, scoliosis, high blood pressure, high cholesterol, hiatal hernia,

242, 249.  The ALJ held a telephonic hearing on July 29, 2020, because of

the COVID-19 pandemic.  R. 16.

On August 25, 2020, the ALJ issued the following written findings:

- Tillman meets the insured status requirements of the Act through December 31, 2022.

- Tillman has not engaged in substantial gainful activity since the alleged onset date of November 16, 2018.

- Tillman has severe impairments of fibromyalgia and degenerative disease of both the cervical spine and the lumbar spine.

- Tillman does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1.

R. 18-19.

Then at step four of the sequential analysis the ALJ found that

Tillman has the Residual Functional Capacity ("RFC") to perform light work

as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) with additional

limitations as follows:

> The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but is unable to climb ladders, ropes or scaffolds.  The claimant can occasionally reach overhead, and push and pull with the upper extremities, bilaterally.  must avoid concentrated exposure to extreme hot and cold temperatures.  The claimant must avoid concentrated exposure to extreme cold temperatures and vibration.

---

mouth sores, benign tumor in right arm, menopause, fibroids, and hormone replacement.  R. 93.

R. 20.  Based upon this RFC the ALJ found that Tillman was capable of

performing past relevant work as a cashier checker as actually or generally

performed.  R. 27.  Consequently, the ALJ determined that Tillman was not

under a disability, as defined in the Act, from November 16, 2018, through

the date of decision.  R. 27.

The Appeals Council denied review.  R. 1-3.  This appeal followed.

## II.  STANDARD OF REVIEW

The Commissioner's conclusions of law, including applicable review

standards, are not presumed valid.  *MacGregor v. Brown*, 786 F.2d 1050,

1053 (11th Cir. 1986) (*citing Wiggins v. Schweiker,* 679 F.2d 1387, 1389

(11th Cir. 1982) quoting *Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir.

Unit A June 1981)).  The Commissioner's failure to apply the correct legal

standards or to provide the reviewing court with sufficient basis for a

determination that proper legal principles have been followed mandates

reversal. *Gibson v. Heckler,* 779 F.2d 619, 622 (11th Cir. 1986) (citation

omitted); *Bowen v. Heckler,* 748 F.2d 629, 635-36 (11th Cir. 1984); *see*

*Ambers v. Heckler,* 736 F.2d 1467, 1470 (11th Cir. 1984).  Accordingly, the

district court will reverse the Commissioner's decision on plenary review if

the decision applies incorrect law, or if the decision fails to provide the

district court with sufficient reasoning to determine that the Commissioner

properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The Commissioner's findings of fact, however, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (citation omitted). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citations omitted); *see also Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) ("[T]he entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings.") (citation omitted); *Parker v. Bowen,* 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied).

## III.  DISABILITY UNDER THE ACT

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1) (2020); 20 C.F.R. §§ 404.1505, 416.905 (2012). The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.  To be non-severe, the impairment must be "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Parker v. Brown,* 793 F.2d 1177, 1181 (11th Cir. 1986) (citations omitted).

The ALJ must follow five steps in evaluating a claim of disability.  20

C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the

existence of a disability as defined by the Social Security Act. *Carnes v.*

*Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (citation omitted). First, if a

claimant is working at a substantial gainful activity, he is not disabled. 20

C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if a claimant does

not have any impairment or combination of impairments which significantly

limit her physical or mental ability to do basic work activities, then he does

not have a severe impairment and is not disabled. 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,

he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At the fourth step, the ALJ must assess: (1) the claimant's residual

functional capacity ("RFC"); and (2) the claimant's ability to return to his

past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir.

2004) (*citing* 20 C.F.R. § 404.1520(a)(4)(iv)).  As for the claimant's RFC,

the regulations define RFC as that which an individual is still able to do

despite the limitations caused by his or her impairments.  20 C.F.R. §

404.1545(a).  Moreover, the ALJ will "assess and make a finding about [the

claimant's] residual functional capacity based on all the relevant medical

and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to his past relevant work under the fourth step; and (2) can adjust to other work under the fifth step. 20 C.F.R. § 404.1520(e).  At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) (per curiam).  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).[2]

---

[2] In *Doughty*, the Eleventh Circuit Court of Appeals explained the burden shifting process as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner…. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform…. In order to be considered disabled, the claimant must then prove that she is unable to perform the jobs that the Commissioner lists…. The temporary shifting of the burden to the Commissioner was initiated by the courts and is not specifically provided for in the statutes or the regulations….

> *Doughty*, 245 F.3d at 1278 n.2 (internal citations omitted).

# IV.  DISCUSSION

Tillman argues that the ALJ erred in two ways.   First, Tillman says the ALJ erred by not following the proper evaluation standards for determining the severity and functional limitations in cases involving fibromyalgia as required in SSR 12-2p.  Second, Tillman says the ALJ erred by rejecting the medical findings and opinions of Tillman's treating rheumatologist without good cause.  The Court addresses each argument in turn.

## A.    The ALJ erred by failing to evaluate Tillman's fibromyalgia under SSR 12-2p.

Tillman argues that the ALJ did not properly consider the severity and functional limitations of her fibromyalgia. Specifically, Tillman contends that the ALJ failed to comply with SSR 12-2p, which sets forth how to determine whether a person has the medically determinable impairment of fibromyalgia and, more pertinent to this case, how to evaluate the severity and functional limitations in a case concerning fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). The Commissioner argues that the ALJ properly evaluated the severity and functional limiting effects of Tillman's fibromyalgia and that SSR 12-2p does not require that a diagnosis of fibromyalgia equates to any specific limitations or disability.

Fibromyalgia "is 'characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (quoting SSR 12-2). The Social Security Administration ("SSA") promulgated SSR 12-2p to provide guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how it will evaluate this impairment in a disability claim. SSR 12-2p, 2012 WL 3104869, at *1. The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling. When making an RFC determination, SSR 12-2p states, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6.

When determining whether a claimant can do any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to be alert to the possibility that there may be exertion or nonexertional limitations, such

as postural or environmental limitations, that may impact the analysis. *Id*.

The ruling advises that "[i]f objective medical evidence does not

substantiate the person's statements about the intensity, persistence, and

functionally limiting effects of symptoms," the SSA will consider all of the

record evidence, including the claimant's daily activities, medications or

other treatments the person uses, or has used, to alleviate symptoms, the

nature and frequency of the person's attempts to obtain medical treatment

for symptoms, and statements by third parties about the claimant's

symptoms. SSR 12-2p, 2012 WL 3104869, at *5.

In the present case, the ALJ appropriately recognized Tillman's

fibromyalgia diagnosis and concluded it was a severe impairment. The ALJ

found, however, that, while Tillman's medically determinable impairments,

including fibromyalgia, could reasonably be expected to produce the

alleged symptoms, her statements regarding the intensity, persistence, and

limiting effects of these symptoms were not entirely consistent with the

medical evidence and other evidence in the record. R. 22.  Instead of

sufficiently considering or discussing Tillman's symptoms in the context of

her daily activities, medications or other treatments, the nature and

frequency of medical treatment, and statements by third parties, as

required by SSR 12-2p, the ALJ focused on whether the objective medical evidence substantiated Tillman's symptoms.

The objective medical evidence upon which the ALJ relied in discounting Tillman's fibromyalgia-related symptoms included, but was not limited to, a magnetic resonance imaging (MRI) scans of Tillman's lumbar spine, thoracic spine, and cervical spine from January 2019, which showed only mild to moderate degenerative disc disease throughout; x-rays of Tillman's right shoulder, which showed no arthritic changes; right knee x-rays, which were normal; Tillman's "normal gait"; and her "conservative treatment", consisting of medication, management and steroid injections.

Importantly, the ALJ's consideration of the objective medical evidence ignores the fact that physical examinations for person's suffering from fibromyalgia will usually yield normal results, *e.g.*, a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. *See Johnson v. Colvin*, Case No. 1:14cv149-WS, 2015 WL 1931218, at *9 (N.D. Fla. Apr. 27, 2015) (citations omitted); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").  Indeed, it is

common in cases involving fibromyalgia to find evidence of such examinations and testing to rule out other disorders that could account for the person's symptoms and signs.  SSR 12-2p, 2012 WL 3104869, at *3; *see also Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) (the hallmark of fibromyalgia is "a lack of objective evidence" because it "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms") (citations omitted).

Undue emphasis on the lack of objective findings to substantiate a claimant's fibromyalgia-related reports constitutes error under well-established case law of this Circuit. *Witherell v. Berryhill*, Case No. 8:17-cv-2806-T-CPT, 2019 WL 1397927, at *4 (M.D. Fla. Mar. 28, 2019). Here, the ALJ's conclusory reasoning and repeated reference to objective medical evidence demonstrates that he relied primarily—if not exclusively—on the objective medical evidence.

More problematic, the ALJ did not adequately consider (or even refer to) SSR 12-2p's framework for evaluating fibromyalgia when discounting Tillman's statements regarding intensity, persistence, and limiting effects of her symptoms. *See, e.g., Catalan v. Berryhill*, Case No. 8:17-cv-1425-T-30MAP, 2018 WL 4055340 (M.D. Fla. Aug. 9, 2018) (remanding where ALJ

failed to mention or follow SSR 12-2p's criteria concerning fibromyalgia);

*Janeda v. Comm'r of Soc. Sec.*, Case No. 2:16-cv-803-FtM-MRM, 2018 WL

1282313 (M.D. Fla. Mar. 13, 2018) (remanding where ALJ failed to

consider claimant's fibromyalgia pursuant to SSR 12-2p and may have

erred in evaluating her fibromyalgia); *Morgan v. Comm'r of Soc. Sec.*, Case

No. 8:14-cv-305-T-DNF, 2015 WL 1311062 (M.D. Fla. Mar. 24,

2015) (remanding where ALJ failed to mention or follow SSR 12-2p's

criteria concerning fibromyalgia).

As such, the ALJ's analysis regarding Tillman's fibromyalgia-related

symptoms is inadequate, and the Court is unable to determine whether the

ALJ's ultimate disability determination is supported by substantial

evidence. *See Atkins v. Comm'r of Soc. Sec.*, Case No. 3:19-CV-142-J-

MAP, 2019 WL 6838512, at *3-5 (M.D. Fla. Dec. 16, 2019) (finding that,

because the ALJ failed to consider claimant's fibromyalgia according to the

criterion set forth in SSR 12-2p, the Court was unable to determine whether

the ALJ's ultimate disability determination was supported by substantial

evidence); *Cline v. Comm'r of Soc. Sec.*, Case No. 6:17-cv-1373-Orl-22-

DCI, 2018 WL 1800861, at *4 (M.D. Fla. Mar. 29, 2018) (finding the ALJ's

conclusory reasoning demonstrated that he relied primarily on the objective

medical evidence, instead of the record as a whole, in evaluating the

testimony of the claimant and, as such, the ALJ's credibility determination did not comport with the requirements of SSR 12-2p).

In view of the foregoing, the Court concludes that reversal and remand is warranted.

**B.    Plaintiff's reliance on the treating physician rule is misplaced as the rule has been superseded by the agency's new regulations.**

Tillman next complains that the ALJ erred by discounting, without good cause, the medical findings and opinions of her treating rheumatologist, T. Mark Lloyd, M.D., who treated Tillman's fibromyalgia on a regular basis from 2011 through 2020.  R. 1133.  The Commissioner opposes the argument on the grounds that the agency's new regulations supersede the deference previously afforded to a treating physician's medical opinion.  Under the new regulations, the ALJ need only consider all of the medical opinions in the records and evaluate them for persuasiveness, considering "supportability and consistency as the most important factors."  ECF No. 18 at 20.  To that end, the Commissioner argues the ALJ did not err as substantial evidence supports his discounting of Dr. Lloyd's opinion.

Upon careful consideration, the Court concludes that Tillman's reliance on the treating physician rule is misguided.  As the Eleventh Circuit

recently made clear, the treating physician rule has been abrogated by 20

C.F.R. § 404.1520c (2017). *Zinta Harner v. Soc. Sec. Admin*., *Comm'r*,

Op. No. 21-12148 (11th Cir. Jun. 28, 2022). Under the new regulations, the

most important factors the Commissioner will consider when determining

the persuasiveness of medical opinions are supportability and consistency.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations state that

the Commissioner will explain how the supportability and consistency

factors were considered in the determination or decision. *Id.* Other factors

to be considered include the following:

> (3) Relationship with the claimant. This factor combines
> consideration of the issues in paragraphs (c)(3)(i) through (v) of
> this section.
>> (i) Length of the treatment relationship. The length of time
>> a medical source has treated you may help demonstrate
>> whether the medical source has a longitudinal
>> understanding of your impairment(s).
>> (ii) Frequency of examinations. The frequency of your
>> visits with the medical source may help demonstrate
>> whether the medical source has a longitudinal
>> understanding of your impairment(s).
>> (iii) Purpose of the treatment relationship. The purpose for
>> treatment you received from the medical source may help
>> demonstrate the level of knowledge the medical source
>> has of your impairment(s).
>> (iv) Extent of the treatment relationship. The kinds and
>> extent of examinations and testing the medical source
>> has performed or ordered from specialists or independent
>> laboratories may help demonstrate the level of knowledge
>> the medical source has of your impairment(s).
>> (v) Examining relationship. A medical source may have a
>> better understanding of your impairment(s) if he or she

> examines you than if the medical source only reviews
> evidence in your folder.
> (4) Specialization. The medical opinion or prior administrative
> medical finding of a medical source who has received
> advanced education and training to become a specialist may be
> more persuasive about medical issues related to his or her area
> of specialty than the medical opinion or prior administrative
> medical finding of a medical source who is not a specialist in
> the relevant area of specialty.
> (5) Other factors. We will consider other factors that tend to
> support or contradict a medical opinion or prior administrative
> medical finding. This includes, but is not limited to, evidence
> showing a medical source has familiarity with the other
> evidence in the claim or an understanding of our disability
> program's policies and evidentiary requirements. When we
> consider a medical source's familiarity with the other evidence
> in a claim, we will also consider whether new evidence we
> receive after the medical source made his or her medical
> opinion or prior administrative medical finding makes the
> medical opinion or prior administrative medical finding more or
> less persuasive.

20 C.F.R. § 404.1520c (2017).   Courts have found that "[o]ther than

articulating his consideration of the supportability and consistency factors,

the Commissioner is not required to discuss or explain how he considered

any other factor in determining persuasiveness." *Bevis v. Comm'r of Soc.*

*Sec.*, 552 F. Supp. 3d 1266, 1271-72 (M.D. Fla. 2021) (quoting *Freyhagen*

*v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL

4686800, at *2 (M.D. Fla. Sept. 26, 2019) (quoting *Mudge v. Saul*, No.

4:18-cv-693-CDP, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)); *see*

*also Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-Orl-PDB, 2020 WL

5810273, at *5 (M.D. Fla. Sept. 30, 2020) (finding no error where ALJ did not specifically address in the decision any factors other than supportability and consistency).  Those courts, however, were not confronted with a claimant who suffers from fibromyalgia.

In the present case, the ALJ acknowledged both the duration of Dr. Lloyd's treatment relationship with Tillman as well as the findings and opinions set forth in his medical source statement.  R. 22.  Nevertheless, the ALJ rejected Dr. Lloyd's opinion on four distinct issues relevant to this appeal.

First, the ALJ discounted Dr. Lloyd's opinion that Tillman experiences muscle weakness and could not lift or carry even 10 pounds, and that she has significant manipulative limitations and moderate to severe pain in her arms, hands, hips, legs, knees and feet. The objective medical evidence the ALJ cited to support his decision to disregard Dr. Lloyd's opinion were as follows:

- A May 2019 examination that documented normal strength and sensation.

- August 2019 Progress Notes that showed mild decrease in Tillman's right shoulder range of motion due to shoulder tenderness, along with positive trigger points, with mild to moderate tenderness; back was normal; other joints were normal in terms of range of motion; motor strength and sensation were normal.

- A November 2019 examination that documented normal strength and sensation.

- February 2020 Progress Notes that showed normal strength and sensation.

R. 25.

Second, the ALJ rejected Dr. Lloyd's opinion that Tillman could only

rarely look down and occasionally turn her head to the right or left, or look

up, as inconsistent with the following evidence:

- Records from Interventional Medical Associates noting Tillman's cervical tenderness but showing no signs of cervical adenopathy.

- A cervical MRI that revealed no cervical spondylosis causing mild cord compression and severe bilateral foraminal stenosis.  The MRI also revealed small central disc protrusions at C3-C4 and C4-C5 causing mild ventral impression on the spinal cord, and mild spondylosis at C6-C7 causing moderate bilateral foraminal stenosis, with no cord compression.  At C2-C3, there was a small disc protrusion causing mild ventral thecal sac impression.

- Multiple entries from Dr. Lloyd describing Tillman's neck as supple, or noting no decrease in suppleness.

R. 25.

Third, the ALJ rejected Dr. Lloyd's opinion that Tillman is limited in

her ability to stand and walk; that she could only do so for less than (2) two

hours during the course of a workday; and that she was unable to squat

and could only rarely twist.  *Id.*  In rejecting Dr. Lloyd's opinion here, the

ALJ cited to "multiple entries" that described Tillman's "gait as normal."  R. 25-26.

Fourth, and finally, the ALJ rejected Dr. Lloyd's opinion that Tillman would be absent from work for more than four workdays per month; that she was incapable of even low stress work; and that her symptoms would interfere with her ability to maintain attention and concentration for more than twenty-five (25) percent of the workday.  R. 26.  In rejecting this opinion, the ALJ cited to a February 2020 entry that described Tillman as "in no acute distress, well developed, and well appearing."  R. 26.  The ALJ pointed out that this description of Tillman appears elsewhere in the record. *Id*.  Further, the ALJ reasoned that Tillman's "treatment is generally conservative in nature, primarily consisting of medication and injections." R. 26.

Based on the above, the ALJ concluded that Dr. Lloyd's opinions were inconsistent with and not supported by the objective medical evidence.  The ALJ further determined that the opinion of the state agency reviewing doctor that Tillman could perform light work was "more consistent with the examination results and radiographic evidence" and therefore the ALJ found that opinion to be "more persuasive than Dr. Lloyd's opinion."  R. 26.

The ALJ discounted Dr. Lloyd's opinion by looking at the very evidence that the SSA has determined is not sufficient when making a disability determination for a claimant who suffers from fibromyalgia. Although this Court does not find reversible error here, the Court will direct that the ALJ consider factors in addition to supportability and consistency when re-assessing Dr. Llyod's opinions on remand. In particular, the ALJ should take note of the regulations' statement that "[a] medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines [her] than if the medical source only reviews evidence in [the claimant's] file." 20 C.F.R. § 1520c(3)(v).

## V.  CONCLUSION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED.** On remand, the Commissioner should reassess the entire record, evaluate Plaintiff's fibromyalgia in accordance with SSR 12-2p, consider Dr. Lloyd's findings and opinions in light of all of the factors set forth in 20 C.F.R. § 404.1520c(3), and provide sufficient reasons and readily-identifiable evidentiary support for his decision.

**IN CHAMBERS** in Gainesville, Florida this 6th day of July 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**